# EXHIBIT 5

MARTIN J. ADELMAN,    JANUARY 26, 2009

**1**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CANCER RESEARCH TECHNOLOGY LIMITED
and SCHERING CORPORATION,
                    Plaintiffs,
    -VS-            Case No. 07-457 (SLR)
BARR LABORATORIES, INC., and
BARR PHARMACEUTICALS, INC.,
                    Defendants.
_____/

VIDEOTAPED DEPOSITION
DEPONENT:   Martin J. Adelman
DATE:       Monday, January 26, 2009
TIME:       8:00 a.m.
LOCATION:   2501 Worldgateway Place
            Detroit, Michigan
REPORTER:   Quentina Rochelle Snowden,
            Certified Shorthand Reporter-5519
            and Notary Public

**2**

1  APPEARANCES:
2  Ropes & Gray
3  BY: MATTHEW A. TRAUPMAN
4  1211 Avenue of the Americas
5  New York, New York 10036-8704
6  (212) 596-9000
7  E-mail: matthew.traupman@ropesgray.com
8      Appearing on behalf of the Plaintiffs.
9
10 Winston & Strawn, LLP
11 BY: LYNN MACDONALD ULRICH
12 35 W. Wacker Drive
13 Chicago, Illinois 60601-9703
14 E-mail: lulrich@winston.com
15 (312) 558-5700
16     Appearing on behalf of the Defendants.
17
18 VIDEO TECHNICIAN:  Patrick Murphy
19         Esquire Deposition Services
20
21 ALSO PRESENT:    Lisa Jakob
22              Schering-Plough Corporation
23
24
25

**3**

1          EXAMINATION INDEX
2               FOR
3          MARTIN J. ADELMAN
4                        PAGE
5  Examination by Ms. Ulrich..........................05
6          EXHIBIT INDEX
7  EXHIBIT  DESCRIPTION        MARKED
8  NUMBER                 PAGE
9  NO. 1  EXPERT REPORT OF PROFESSOR    04
       MARTIN J. ADELMAN
10
11 NO. 2  291 PROSECUTION HISTORY      04
12 NO. 3  291 PROSECUTION HISTORY      04
13 NO. 4  MANUAL OF PATENT EXAMINING PROCEDURE  87
14 NO. 5  MANUAL OF PATENT EXAMINING PROCEDURE  88
15 NO. 6  DOCUMENT ENTITLED COMMENTS OF    197
       THE BIOTECH INDUSTRY ORGANIZATION
16 NO. 7  TRANSCRIPT OF THE PUBLIC HEARINGS   200
       ON BIOTECHNOLOGY
17
18 NO. 8  MANUAL OF PATENT EXAMINING PROCEDURE  208
19 NO. 9  DOCUMENT ENTITLED PATENT LAW      221
       PERSPECTIVES
20        (Exhibits attached to the transcript.)
21
22
23
24
25

**4**

1              Monday, January 26, 2009
2                Detroit, Michigan
3                  8:00 a.m.
4      (Deposition Exhibit Nos. 1-3 were marked
5  for identification.)
6      VIDEO TECHNICIAN:  We are on the record.
7  This is disk one of the video deposition of Martin
8  Adelman being taken at 2501 Worldgateway Place in
9  Romulus, Michigan.  Today is Monday, January 26,
10 2009 and the time is approximately 8:07 a.m.
11     This is in the matter of Cancer Research
12 Technology versus Barr Laboratories, Inc., Case
13 Number 07-457, pending in the U.S. District Court
14 for the District of Delaware.
15     My name is Patrick Murphy, legal
16 videographer for Esquire Deposition Services.  The
17 attorneys will now introduce themselves for the
18 record.
19     MS. ULRICH: Lynn Ulrich on behalf of
20 Winston and Strawn and the Defendants Barr
21 Laboratories and Barr Pharmaceuticals who were
22 recently acquired by Tava Pharmaceuticals.
23     MR. TRAUPMAN: Matt Traupman from Ropes and
24 Gray on behalf of the witness and Plaintiffs CRT and
25 Schering.

MARTIN J. ADELMAN,   JANUARY 26, 2009

5

```
           MARTIN J. ADELMAN
1
2    after having been first duly sworn to tell the
3    truth, was examined and testified upon his oath as
4    follows:
5                    -oOo-
6              EXAMINATION
7    BY MS. ULRICH:
8    Q    Good morning, Mr. Adelman. How are you?
9    A    Good morning.
10   Q    You've given depositions before, correct?
11   A    Yes.
12   Q    Okay. So I don't need to go through the procedure
13        of how to give a deposition; is that right?
14   A    That's correct.
15   Q    All right. Let me show you what I've had previously
16        marked as Adelman 1. Do you recognize this as the
17        expert report that you tendered in this litigation?
18   A    Yes.
19   Q    Okay. Does it have your signature?
20   A    Yes, it does.
21   Q    Okay. And is everything in this report true and
22        accurate as you sit here today?
23   A    Well, I hope so.
24   Q    Is there anything that you would like to change
25        before we start the deposition?
```

6

```
1    A    No.
2    Q    Okay. Mr. Adelman, I understand that you indicated
3         on the front page of your report that there were
4         several areas in your report that you were tendering
5         conditionally I think is the word that you used.
6         Which paragraphs in your report are the parts that
7         your conditional opinion or the conditional
8         paragraph?
9              MR. TRAUPMAN: This has been addressed in
10        numerous letter writing, as the entire record is
11        conditional upon the resolution of the Linck -- your
12        presentation of the Linck report and our belief and
13        Judge Robinson's apparent belief that expert
14        testimony from patent law experts are inappropriate.
15        So I think that's been well resolved.
16             MS. ULRICH: So the whole report is
17        conditional, that's what you're saying?
18             MR. TRAUPMAN: Yes.
19   BY MS. ULRICH, CONTINUING:
20   Q    Okay. And is that your understanding Dr. -- or
21        Mr. --
22   A    That's been my understanding, but it is a matter for
23        counsel.
24   Q    Okay. I was just curious because it says you
25        indicate there were certain areas that you were
```

7

```
1    offering rebuttal unconditionally and then there
2    were other areas that it indicates Plaintiffs have
3    advised the court their belief that certain
4    testimony would be proper. Is it your understanding
5    that there are certain paragraphs in here that go to
6    that latter part, which is that there are certain
7    paragraphs that you think would be proper?
8              MR. TRAUPMAN: Am I speaking to the walls?
9    The entire report is conditional. There's no --
10   there's nothing unambiguous about that -- that
11   statement.
12             MS. ULRICH: Okay, well actually there is,
13   Matt. You don't need to get upset, sir.
14             MR. TRAUPMAN: I'm not upset.
15             MS. ULRICH: You seem a little edgy.
16             MR. TRAUPMAN: No, I'm not.
17             MS. ULRICH: All right, Matt, it says in
18   here, it says, I understand that counsel for
19   Plaintiffs have advised the court of their belief
20   that expert testimony directed to the Patent Office
21   involving policies concerning anti-cancer claims in
22   the 1980s and 1990s is appropriate, and will be
23   helpful to the court. I offer my opinion from that
24   issue therein. So are you telling me that's not
25   accurate, that's conditional?
```

8

```
1              MR. TRAUPMAN: I'm telling you the -- the
2    expert report of Professor Adelman is being put
3    forth on a conditional basis.
4              MS. ULRICH: Okay. Got it clear.
5    BY MS. ULRICH, CONTINUING:
6    Q    Mr. Adelman, I'd like to talk a little bit about
7         your background and qualifications. I understand
8         you've been a professor here in Michigan for quite
9         awhile; is that right?
10   A    That's correct.
11   Q    Okay. Where are you a professor?
12   A    George Washington University in Washington DC.
13   Q    Were you a professor prior to that?
14   A    Here.
15   Q    Here?
16   A    At Wayne State University law school.
17   Q    And how many years were you a professor?
18   A    25 years.
19   Q    How long have you been with George Washington law
20        school?
21   A    This is my eleventh year.
22   Q    Okay. Do you live in DC in addition to Michigan?
23   A    No.
24   Q    Okay. Just commute?
25   A    Yes.
```

MARTIN J. ADELMAN,   JANUARY 26, 2009

### 9

1   Q   I understand that from 1968 to 1972, you worked at
2       the firm Barnard -- is that Barnard, McGlynn and
3       Reising; is that correct?
4   A   The firm name is correct. But, I actually started
5       there as an associate in -- I think it was the
6       summer of 1965.
7   Q   '65. Okay.
8   A   I have to figure it out.
9   Q   What type of work did you do while you were there?
10  A   It started out as legal research and prosecution
11      work. As things evolved, I became more and more
12      involved in litigation and only did prosecution if
13      there was an electrical case or helping Paul Reising
14      with chemical cases. Otherwise, it was litigation
15      and litigation took up more and more of my time.
16  Q   How many prosecutions would you estimate you worked
17      on while you were with the firm?
18  A   The firm, no more than 20 I would -- in that area.
19  Q   And of those 20, how many of them would you say were
20      part of the chemical or small molecule discipline?
21  A   Small molecule discipline would have been almost all
22      the amendments. There were quite a few, but it was
23      in one major technology, the -- it had a trade name
24      Cermilet (ph) and it was owned by the Coors Brewery,
25      and Coors was represented by Paul Reising of McGlynn

### 10

1       and Reising.
2   Q   Did you work on any pharmaceutical prosecutions?
3   A   The best of my recollection, there was no
4       pharmaceutical cases in the office at all.
5   Q   Have you ever worked on any pharmaceutical
6       prosecutions in your career?
7   A   I would not have worked on any prosecution prior to
8       my leaving Barnard, McGlynn and Reising, so I can't
9       think of any.
10  Q   So that's a good point. All of the prosecution work
11      that you've done in your career would have been
12      while you were with the firm; is that correct?
13  A   That's correct. There -- yeah, that -- that's the
14      best of my recollection.
15  Q   Okay. Have you ever worked on any prosecutions or
16      did you ever work on any prosecutions relating to
17      the treatment of cancer?
18  A   No. There were no -- no, there were no prosecutions
19      at all in pharmaceuticals.
20  Q   In the 1980 to 1993 time period, is it accurate you
21      did not work on any prosecutions of any kind during
22      that time period?
23  A   I think that's accurate.
24  Q   Have you ever been employed by the Patent and
25      Trademark Office?

### 11

1   A   No.
2   Q   You were never a solicitor?
3   A   No.
4   Q   Never any type of examiner?
5   A   No.
6   Q   Do you have a degree in chemistry?
7   A   No. My undergraduate degree was in medical science,
8       which was a combination of physics, chemistry, and
9       biology and I received a graduate degree in physics.
10      But the only chemistry course I took at that time
11      was quantum chemistry.
12  Q   Is the Master's in physics your highest scientific
13      degree?
14  A   Yes.
15  Q   Have you ever clerked for the Federal Circuit?
16  A   That would be quite impossible.
17  Q   Did you ever -- did you ever clerk at all?
18  A   I clerked for the chief judge of the Federal
19      District Court in -- in Detroit when I graduated
20      from law school.
21  Q   What time period would that have been?
22  A   That was 1962 to 1963.
23  Q   Now I also understand that you worked for Burroughs
24      for approximately one year; is that correct?
25  A   That is correct, and it would have been from 1964,

### 12

1       maybe the summer, that's my recollection, for
2       approximately one year.
3   Q   What type of work did you do while you were there?
4   A   Burroughs had, at that time, like other companies,
5       like GE probably had the most famous one, a patent
6       training program in Washington 18th and H right by
7       my office actually, and in that facility, they had a
8       patent lawyer who was essentially a trainer, and he
9       would get cases from the company for the trainees to
10      work on. The major idea was to take engineers who
11      would then go to law school at night, and train them
12      in all aspects of patent law. But I already had my
13      law degree, so it was sort of an accelerated course
14      that I took, and I was supposed to listen to
15      lectures, do searches, write amendments, and pass
16      the patent bar, which was part of what I was
17      supposed to do.
18  Q   Did you pass the patent bar?
19  A   Yes.
20  Q   Okay. And you were with Burroughs for -- what was
21      the time period you were there?
22  A   It was about one year.
23  Q   Did you --
24  A   In Washington.
25  Q   I apologize. Did you work on any patent

MARTIN J. ADELMAN,   JANUARY 26, 2009

237

1  obtained that we talk about in our patent, let's
2  give that to you so that could help you facilitate
3  your decision. I mean, that's something they could
4  have done here, right?
5      MR. TRAUPMAN:  Objection, vague.
6  Incomplete hypothetical.
7      THE WITNESS:  They could do many
8  hypothetical things. The fact is this data was in
9  the application and summed up. If he wanted to say
10  I'm just about there, you have allowable subject
11  matter, I'm going to give you the claims, but I want
12  to know X about the test, I suppose he could have
13  said that, which I think you probably would have to
14  respond to. If he says this is allowable, it's --
15  I'm going to give it to you, but you say this is
16  true, you know, exactly what did you do here. I'm
17  -- I'm just trying to come up with some
18  hypothetical --
19 BY MS. ULRICH, CONTINUING:
20  Q  Sure.
21  A  -- where he's allowing the case, he's telling you
22  it's allowable, and he just wants to send him a
23  document or send him a piece of paper saying
24  something.
25  Q  So you're saying that you would read the office

238

1  actions here and jump to the conclusion that you
2  need successful human clinical data. There would be
3  nothing in between responding to the office action
4  and jumping to the conclusion of I need to go out
5  and spend hundreds of thousands of dollars to get
6  successful human data to satisfy my application.
7  There's nothing in between those two options?
8      MR. TRAUPMAN:  Objection, argumentative.
9      THE WITNESS:  I don't know what you're
10  arguing about. There -- I'm entitled -- let's go
11  back to the basics, which you kind of forget. I'm
12  entitled to submit a document as long as it's
13  complete, and expect the Patent Office to allow my
14  claim. That's their job, to read the patent
15  application, and if it's allowable, allow it.
16 BY MS. ULRICH, CONTINUING:
17  Q  Mr. Adelman -- I'm sorry, if you weren't finished, I
18  apologize.
19  A  And I really don't have to do anything more than
20  that.
21  Q  Okay. You've indicated that you've spent a lot of
22  time being an expert in litigation, correct?
23      MR. TRAUPMAN:  Objection, vague.
24      THE WITNESS:  I don't -- I don't remember
25  testifying about that one way or another.

239

1 BY MS. ULRICH, CONTINUING:
2  Q  Have you been an expert in almost 190 litigations?
3  A  I've testified by way of deposition or at trial in
4  about 190.
5  Q  Were you an expert in those cases?
6  A  Well, I was a patent law and patent expert. Oh, I
7  see.
8  Q  Yes.
9  A  Yeah.
10  Q  You were?
11  A  Yeah.
12  Q  Has a court ever disagreed with your view on the law
13  as it relates to patent law?
14  A  Let me see. Do you mean has a court ever gotten it
15  wrong? Judicial error. I remember a case early in
16  -- in my career where I testified about what a claim
17  meant and the trial judge -- and I think he was
18  correct, and I was wrong on this -- the -- the trial
19  judge said -- well, he agreed with my conclusion.
20  He didn't think it was appropriate for a patent
21  expert to testify about claimed construction. I
22  remember that.
23      There was another case where the trial
24  judge said that I had testified as a technical
25  expert and he knew more about the technology than I

240

1  did. The only problem was, I wasn't qualified as a
2  technical expert, and he did know more of the
3  technology than I did. He was -- he was right about
4  that. Wrong about the fact that I testified as a
5  technical expert. I'm sure there have been other
6  situations over 30 years. I probably can --
7  Q  Are you aware of any opinions that are published
8  that comment on your opinions? Both positively and
9  negatively?
10  A  I think there are, but I'm not -- I'm a little vague
11  on it now.
12  Q  Okay. Have you ever been wrong on your view of the
13  patent law as it applies to a particular case? I
14  mean, in your own opinion, have you been wrong?
15  A  I've been wrong.
16  Q  When have you been wrong?
17  A  I don't remember, but I've been wrong.
18  Q  What kind of cases were you wrong?
19  A  I don't remember.
20  Q  You just have a general recollection that you've
21  been wrong?
22  A  That sometimes I've thought, I don't know, maybe,
23  maybe that was wrong. Normally I don't testify on
24  the law. And I tend not to do that. So --
25  Q  Are you testifying on the law -- I'm sorry, go ahead

MARTIN J. ADELMAN,   JANUARY 26, 2009

241

1 and finish.  I apologize.
2 A   It would be rare.
3 Q   Are you testifying on the law in this case?
4 A   Well it may be, because I don't understand why I'm
5 testifying at all since I think this is all
6 inappropriate testimony.
7 Q   Okay.  So you don't think there's anything that you
8 can add to this case that would assist Judge
9 Robinson?
10 A   I do not.  I think Judge Robinson can read the
11 prosecution histories, she knows that the
12 application is allowable, so there's no prosecution
13 history -- I mean, no prosecution latches which is a
14 question of equity.  It's a question of law and
15 there's no basis for your claim.  I'm not testifying
16 about inequitable conduct.  Sometimes you can help a
17 court talk about what is or is not relevant so that
18 it's got to be considered by the court.  But I'm not
19 doing that.  I'm not testifying about what happened
20 with the prosecution history that would raise issues
21 of prosecution history estoppel, I'm not doing that.
22 Q   And you're not testifying as to whether or not the
23 data that was -- was available would have been
24 sufficient to give to the Patent Office, right?
25 A   That's right, because no patent expert can tell you

242

1 about that.
2 Q   Well, I mean there are some patent experts that can
3 do that, right?  I mean if you have an expert who is
4 also an expert in the sciences, that person could
5 give that kind of opinion, don't you think?
6 A   Well, then they're not a patent expert.  If you're
7 talking about a scientific expert now, you're
8 talking about an expert in science.  I have to think
9 about whether a scientific expert could add
10 anything.  Sometimes they can.
11 Q   Okay.
12 A   I'm not --
13 Q   But you're not a scientific expert?
14 A   I haven't thought about it.  But since I'm not a
15 scientist, I'm not testifying as a scientist.
16 Q   Let me ask you something repeatedly, you said this
17 repeatedly, and I apologize because I just am not
18 sure that I understand it and I want to make sure
19 that I do.  You said that Judge Robinson would know
20 that these -- that this patent was allowable, she
21 would know that it was allowable.  Can you just
22 explain for me what you mean by that?
23      MR. TRAUPMAN:  Asked and answered about 20
24 times.
25      THE WITNESS:  That's about 25 times.  And

243

1 so I incorporate all my answers.  The application
2 essentially, as filed, was allowed and certainly all
3 of the key claims, what I mean are the killer
4 claims, the ones that Judge Robinson would be
5 concerned about, were presented in allowable form
6 and rejected.  She will know that.  They were --
7 they were in the application, which had data dealing
8 with utility, which essentially was then allowed 12
9 years later and should have been, according to you,
10 allowed initially.
11      So she'll allow that.  So what do I add to
12 Judge Robinson's knowledge?  If she wants to get
13 reversed on appeal, she can accept your argument.
14 And -- and -- but that's up to her as a matter of
15 equity.
16 Q   Just so that we're clear, when we looked earlier in
17 the day at the final application that ultimately
18 issued as the 291 patent, do you remember you saw
19 that they had actually made amendments to the
20 claim?
21 A   They had not made amendments to the claims that I
22 call the killer claims, the claims that describe the
23 product without question, and which you, if that
24 claim lives, you die.
25 Q   Is latches a claim by claim analysis or does it go

244

1 to the whole patent?
2 A   In my analysis, if I presented a claim, as -- as it
3 ultimately issues initially, and that claim is
4 rejected on the merits, there can be no latches.
5 Q   So you think it's a claim by claim analysis?
6 A   Well, yeah.  There could have been -- there could
7 be, it's possible that in Lemelson, there -- we
8 could have had 11 claims that were initially
9 presented, and then one claim that was presented 39
10 years later.  Latches would have only, in my view,
11 applied to the claim that was presented 39 years
12 later.
13 Q   Are you aware of any cases where that's actually
14 happened, where there has been a situation where the
15 court has found latches, but only with respect to a
16 specific claim and not with respect to the
17 application overall?
18 A   Well, you don't have many cases, so -- but this is a
19 matter of equity.  If I'm presenting a claim which
20 is wrongfully rejected, I don't understand how you
21 can argue that there is some reason why that claim
22 wouldn't be enforced.
23 Q   Okay.  Dr. -- or excuse me, Mr. Adelman, around page
24 34 of your report, in paragraph 90 or the heading at
25 least on page 90 -- or page -- let me try this



LEXISNEXIS® FILE & SERVE
24027778
E-SERVICE
Mar 3 2009
2:25PM

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION | ) | |
| | ) | |
| PAULA COOK, Individually and as | ) | C.A. No.  08C-06-086 ASB |
| Special Administrator of the Estate of | ) | |
| ELLIS COOK, Deceased, | ) | Asbestos |
| HORACE JEFFERSON COOK, | ) | |
| Individually and as Surviving Son of | ) | Non-Arbitration |
| ELLIS COOK, Deceased, | ) | |
| | ) | |
|     Plaintiffs, | ) | Trial by Jury of Twelve Demanded |
| vs. | ) | |
| | ) | |
| BONDEX INTERNATIONAL, INC., et al., | ) | |
| | ) | |
|     Defendants. | ) | |

### PLAINTIFFS' ANSWERS TO INTERROGATORIES
### DIRECTED TO PLAINTIFF BY ALL DEFENDANTS
### AND RESPONSE TO REQUEST FOR PRODUCTION

**Preamble**

**A.**     **Personal History**

1.     State all names by which you have been known; the date and place of your birth; occupation; social security number; height; weight; color of hair and eyes; and the number of any motor vehicle operator's license held in the State of Delaware or any other state.

| ANSWER: | Name: | **Ellis H. Cook;** |
|---|---|---|
| | DOB: | **8/24/46;** |
| | Occupation: | **Plumber;** |
| | SSN: | **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;** |
| | Height: | **Not applicable;** |
| | Weight: | **Not applicable; and** |
| | Hair: | **Not applicable.** |

2.    State the address of each place of residence that you have occupied from 1936 to

date.

**ANSWER:    98 Wood St., Varnville, SC 29944;**
**Brunson, SC;**
**Atlanta, GA;**
**Cummings, GA;**
**Statesboro, GA;**
**Bluffton, SC;**
**Thompson, GA; and**
**Fairfax, SC.**

3.    Are you married? If yes, please state the name and present address of your

spouse.

**ANSWER:    Decedent Ellis Cook was married to Plaintiff Paula S. Cook, 98 Wood St.,**
**Varnville, SC 29944 at the time of his death.**

4.    If you have had any previous marriages, please state the name of any former

spouse, and state the date, place and circumstances under which the marriage or marriages were

dissolved or terminated.

**ANSWER:    Judy Melissa Cook, February 1999, Cummins, SC, Deceased.**

5.    Please state the name, ages and present address of your children.

**ANSWER:    Jeff Cook, 4/7/69, Buford, GA.**

6.    If you have ever been a member of the Armed Forces of the United States, state

the following:

(a)    The branch of the service, serial number, and highest rank held;

(b)    The beginning and ending dates of your military services;

(c)    The type of discharge that you received;

(d)    Whether you were given a physical examination which included x-rays
prior to the time you entered the service;

      (e)     Whether you received any injury while in the military services; and

      (f)     Whether you have claimed disability for any injury or physical condition arising out of your military service.

**ANSWER:**    **Decedent Ellis Cook did not serve in the military.**

7.     If you have had a claim arising out of your military service, state the date on which the claim was made, the nature of the claim, the claimed disability and the disability rating, if any, which you were given.

**ANSWER:**    **No.**

8.     If you have ever been convicted of a felony or a crime involving dishonesty, state fully and in detail the date, place and nature of each such felony conviction.

**ANSWER:**    **Objection. Plaintiffs object to this Interrogatory as being beyond the scope of discovery, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, no.**

9.     Give a brief summary of your education, including schools attended and the last year completed.

**ANSWER:**    **1st through 10 grade in Fairfax, SC.**

**B.    Employment Background**

10.    State the names and address of each employer for whom you worked during the years 1936 to date, stating as to each such employer the beginning and ending dates of employment, the nature of the business, the name and address of your direct supervisor, and your particular job function.

**ANSWER:**    **See employment history forms being produced herewith.**

3

## C.     Product I.D. and Exposure History

11.     With respect to any products containing asbestos manufactured, packaged,

furnished, supplied, or sold by each defendant named in this action that you claimed to have

worked with or around, state the following for each defendant.

(a)   The name of the product or products;

(b)   The name of your employer at the time you worked with or around such
product;

(c)   The name and address of the plant where you worked with or around such
products;

(d)   The name and last known address of your immediate supervisor or job
superintendent on such job;

(e)   The name and last known address of all persons with whom you worked
on such jobs; and,

(f)   The approximate length of time that you worked on each such job.

**ANSWER:     See employment history forms being produced herewith.  Decedent Ellis
Cook's co-workers and family may have additional information as to non-occupational and
occupational exposures to asbestos.**

12.     State fully and in detail each and every evidentiary fact upon which the alleged

negligence or alleged liability of each defendant is based.  As to each such fact, state:

(a)   The identities, including names, business addresses, residential address, of
each individual having knowledge of those facts;

(b)   Identify each document which supports or tends to support the existence of
such fact.  Identify the document by briefly describing it, and by stating its
present location and the name and full business address of the present
custodian of the document.

**ANSWER:     Objection.  Plaintiffs object to this Interrogatory as vague, overly broad and
unduly burdensome.  Subject to and without waiving said objections, Plaintiffs state:
Evidentiary facts will be provided as to conditions of the workplace; the Plaintiffs'
exposure to asbestos containing products; the lack of and/or failures of safety or**

respiratory devices; Defendants' state of knowledge regarding asbestos; Defendants' lack of warning; dangers of asbestos and the Defendants' disregard of these dangers; medical records and testimony specific to Decedent Ellis Cook, and other necessary elements of the claim.

The evidence will include, among other items:  testimony specific to this case; documents and exhibits from defendants and other parties, materials from other lawsuits including exhibits, trial testimony, depositions, admissions, discovery, documents produced by all Defendants in previous litigation, and any other relevant sources of information now known or discovered in the future, as investigations as to all Defendants' are on-going.

See also, Master Expert Disclosures, Master Exhibit List, and Case Specific Fact Witness Disclosures that will be filed in compliance with the scheduling order controlling this case.

13.    For each asbestos containing product, material or mineral, manufactured, produced, prepared, distributed or sold by each defendant, state in detail for each such defendant:

(a)    Which such product, material compound, etc. (hereinafter referred to as "product") you claimed to have come into contact with at any time from 1936 to the present;

(b)    Describe separately and in detail each such product as fully as possible including the trade name, product type and product contents;

(c)    The dates on which you came into contact with each such product, as listed in your answer to subpart (a) of this interrogatory, and state with which product or products you came into contact with on each such date;

(d)    The name, address and telephone number of your employer and each date listed in subpart (c) above;

(e)    The name, address and location of your place of employment or job site on each date listed in subpart (c) above;

(f)    The address of your residence on each date listed in subpart (c) above;

(g)    The type of work you were performing on each such date set forth in subpart (c) above;

(h)    The present name, business address and telephone number, and residence address and telephone number of each person who witnessed your work on each date set forth in subpart (c) above;

    (i)     All instructions, recommendations or warnings of any kind regarding each product listed in your answer to subpart (a) above that accompanied the product, i.e., printed on tag, tag covering or instruction sheet accompanying the product, etc., in verbatim or with as complete and accurate detail as is possible;

    (j)     Any and all instructions or recommendations given to you regarding each product listed in your answer to subpart (a) above given by your employer or superior at any time, in verbatim or with as complete and accurate detail as is possible;

    (k)    For what purpose you used each such product listed in your answer to subpart (a) above; and,

    (l)     All literature that you, your attorneys, agents, or anyone acting in your behalf have received regarding each product listed in your answer to subpart (a) above to this interrogatory. Include in your answer the subject matter, document title and publication date of all such literature.

**ANSWER:** **(a-k) Objection. Plaintiffs object to this Interrogatory as overly broad, vague and unduly burdensome. Subject to and without waiving objections, see above response to Interrogatory numbers 10-12.**

**(l) Objection. Plaintiffs object to this Interrogatory as vague, overly broad and unduly burdensome. Subject to and without waiving said objections, see response to Interrogatory number 12. Furthermore, documents will be made available upon request.**

14.    In regard to each and every other defendant named or to be named in this lawsuit,

answer and provide all the information requested in Interrogatory No. 13 accordingly.

**ANSWER:** **See response to Interrogatory number 13.**

15.    Did you ever work with or come in contact with asbestos products manufactured,

sold, etc., by any other entity not named as a defendant in this lawsuit? If yes, identify each such

entity and, with regard to same, answer fully and provide the information requested in

Interrogatory No. 13 accordingly.

**ANSWER:** **Objection, this Interrogatory is overbroad and unduly burdensome and seeks information that is irrelevant, inadmissible, and not reasonably calculated to lead to**

the discovery of admissible evidence.  Without waiving said objection, Plaintiffs may have made applications to several trusts.  Also, see depositions in this case. Subject to and without waiving said objections, to the best of Plaintiffs' knowledge and memory at this time, Plaintiffs recall Decedent Ellis Cook using construction materials including but not limited to joint compounds, floor tiles, asbestos cement pipe, insulated metal pipe, asbestos paper, gaskets, pumps, valves, and automotive friction components, including brakes and clutches, between the years of 1961 and 2007.  Plaintiffs' Investigation continues at this time regarding asbestos content in manufacturer's products.   Also see work history forms being produced herewith.

16.     With respect to each job on which you worked with or around asbestos products, state separately the following as to each such job:

(a)     The name and address of the employer for whom you worked;

(b)     The location of each job (stating the plant site, city, county and state);

(c)     The beginning and ending dates of the job; and product containing asbestos with which you worked on the particular job and a general description of each such product.

**ANSWER:     (a-c) See responses to Interrogatory numbers 10 and 11.**

17.     Are you able to state that you have not worked with or around asbestos products manufactured by companies who are not named defendants in this suit?

**ANSWER:       See response to Interrogatory numbers 15 and 16.**

18.     Please list all past employers in whose employ you came into contact with asbestos or asbestos-containing materials.  Include in your answer for each such employer:

(a)     Name, address and telephone number;

(b)     Job title and work description;

(c)     Type and identity of each such asbestos material with which you had contact;

(d)     Whether employer provided safety equipment so as to reduce or prevent harmful exposure to asbestos materials;

(e)    Whether employer required that employees use safety equipment of the type referred to in subpart (d) above;

(f)    Whether employer ever recommended that such safety equipment be used by its employees;

(g)    Whether employer provided showers for employees;

(h)    Whether employer provided separate lockers for both work and personal clothing; and,

(i)    If company-sponsored physical examinations were required or made available.  If so, please state:

(i)  Whether required or optional;

(ii)  Frequency of examination;

(iii)  Nature and extent of examination;

(iv)  Whether x-ray examination or respiratory or pulmonary examinations were included;

(v)  Frequency with which you submitted to such examination when required or made available;

(vi)  Your detailed reason for failing to submit to such examination when required or made available;

(vii)  Results of each such examination; and,

(viii)  Name, address and telephone number of examining physician, nurse or technician.

**ANSWER:    See work history forms being produced herewith.  It is unknown whether safety equipment or showers were ever offered, recommended, or required by any of Decedent Ellis Cook's employers.  It is unknown whether Decedent Ellis Cook was offered or required to undergo a physical examination by any of his employers.**

19.    Were you ever employed where your duties involved the tearing out of insulation which contained asbestos?  If your answer is in the affirmative, please state for each such employment:

(a)    Name, address and telephone number of employer;

(b)    Name and location of job site;

(c)    Dates of such employment period;

(d)    Detailed job description and description of work methods and techniques; and,

(e)    Whether or not respiratory safety equipment was:

    (i)  Required;

    (ii)  Made available to you; or

    (iii)  Recommended by employer.

**ANSWER:**    **Yes, but Plaintiffs do not recall name of the employer.**

20.    Have you at any time during your lifetime ever used any device to reduce your possible exposure to, or inhalation of, asbestos dust or fiber? If your answer is in the affirmative, please state for each such device:

(a)    The make, model and type;

(b)    From whom it was received;

(c)    Company or employer requirements regarding use of such device;

(d)    Company or employer recommendations regarding use of such device;

(e)    Name, address and telephone number of document title, date and description of the source of such requirement or recommendation;

(f)    Date and time of each period of use of such device; and,

(g)    If you will do so without a motion to produce, please attach a copy of each writing which evidences the requirements or recommendations referred to in subparts (c) and (d) of this interrogatory.

**ANSWER:**    **No.**

21.     Did any of your employers ever suggest or recommend that you might or should use any device to reduce your possible exposure to or inhalation of asbestos dust or fibers?  If your answer is in the affirmative, please state for each and every such employer:

    (a)     Name, address and telephone number;

    (b)     The date, time and place when each such suggestion or recommendation was made;

    (c)     The name, address and telephone number of each person present when such suggestion or recommendation was made to or received by you;

    (d)     The name, address and telephone number of each person receiving same or similar suggestion or recommendation;

    (e)     The exact wording and content of such suggestion or recommendation;

    (f)     Whether such suggestion or recommendation was written or oral, and;

        (i)  If written, please identify in detail each such writing; and,

        (ii)  If oral, please set forth all persons involved and details as to the manner in which each such suggestion or recommendation was presented.

    (g)     The type, make and model of each device referred to in each such suggestion or recommendation;

    (h)     The nature of any action, if any, taken by you in response to each such suggestion; and,

    (i)     Describe in detail your reasons for any response to such suggestions or recommendations other than full compliance thereto.

**ANSWER:   No.**

22.     At any time, did you receive, have knowledge of, or possess any advice, publication, warning, order, directive, requirement or recommendation, written or oral, which purported to:

> (a) Warn or advise you of the possible harmful effects of exposure to, or inhalation of, asbestos or asbestos-containing products; or
>
> (b) Advise or recommend as to techniques, methods or equipment which would serve to reduce or guard against such potentially harmful exposure?

**ANSWER:**  **No.**

23. If your answer to any part of Interrogatory No. 22 is in the affirmative, please state:

> (a) The nature and exact wording of such advice, warning or recommendation;
>
> (b) The complete identity of each source of such advice, warning or recommendation;
>
> (c) The date, time, place, manner and circumstances when each such advice, warning or recommendation was given;
>
> (d) The name, business address and telephone number, job title, residence address and telephone number of each and every witness to the Plaintiffs' reception of such advice, warning or recommendation; and,
>
> (e) The name, business address and telephone number, job title, residence address and telephone number of each and every co-worker or similar member of your trade and occupation who also received the same or similar advice, warning or recommendation.

**ANSWER:**   **Not applicable.**

**D.   Smoking History**

24. Do you smoke cigarettes, cigars or a pipe?

**ANSWER:**   **Yes.**

25. Have you ever smoked tobacco products of any type?

**ANSWER:**   **Yes.**

26. If your answer to Interrogatory No. 24 and/or 25 is in the affirmative, please state fully and in detail:

(a)     The type of tobacco products which you smoke or have smoked, that is, cigarettes, cigars, pipes, etc., stating whether you inhaled the smoke or not;

(b)     The daily frequency with which you smoke or have smoked same, e.g., two packages of cigarette daily, two pipefulls daily, etc.;

(c)     The dates and time periods during which you have smoked;

(d)     For any time periods during which you have ceased smoking tobacco products, your reasons for stopping;

(e)     For any time period when you have commenced smoking tobacco products after a period of having stopped smoking, your reasons for restarting;

(f)     If you smoke cigarettes, please state the average number of packs per day so consumed in each of the following five year periods of 1935 to the present time:

      (i)  1935 - 1940;

      (ii)  1941 - 1945;

      (iii)  1946 - 1950;

      (iv)  1951 - 1955;

      (v)  1956 - 1960;

      (vi)  1961 - 1965;

      (vii)  1966 - 1970;

      (viii)  1971 - 1975;

      (ix)  1976 - present;

(g)     Whether you were ever advised by any physician to stop smoking. If your answer is yes, give the date and name and address of each physician who gave you any such advice, and also state whether you followed that advice; and,

(h)     State the brand of tobacco used by plaintiff.

ANSWER:    (a)      **Filtered cigarettes;**
                (b)      **One pack per day;**
                (c)      **1966-2007;**
                (d)      **Partially quit in 1982-1983;**
                (e)      **Not applicable;**
                (f)

                        (i)      **Not applicable;**
                        (ii)      **Not applicable;**
                        (iii)      **Not applicable;**
                        (iv)      **Not applicable;**
                        (v)      **Not applicable;**
                        (vi)      **Not applicable;**
                        (vii)      **1-2 packs per day;**
                        (viii)      **1-2 packs per day;**
                        (ix)      **1-2 packs per day;**
                (g)      **No; and**
                (h)      **Kool, Marlboro, and Marlboro Lights.**

27.      Are you aware of the United States Surgeon General's warning placed on all cigarette packages and advertisements?

**ANSWER:**      **Objection.  Plaintiffs object to this Interrogatory as irrelevant, vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence.**

28.      Have you ever read the warning referred to in Interrogatory No. 27.  If so, state the date you first read it.

**ANSWER:**      **Objection.  See response to Interrogatory number 27.**

29.      Have you ever smoked cigarettes subsequent to being aware of or reading the warning referred to in Interrogatory No. 27.

**ANSWER:**      **Objection.  See response to Interrogatory number 27.**

30.      Have you ever smoked tobacco products other than cigarettes subsequent to being aware of or reading the warning referred to in Interrogatory No. 27?  If so, what products and when?

**ANSWER:**      **Objection.  See response to Interrogatory number 27.**

13

31.   Have you ever been discharged or voluntarily left a position or changed residence due to health reasons? If yes, please state in detail the times, places and circumstances.

**ANSWER:   Objection. Plaintiffs object to this Interrogatory as irrelevant, vague, and overly broad. Subject to and without waiving said objection, No.**

32.   Have you ever been hospitalized, operated upon, or confined to an institution? If yes, please state:

(a)   The names and address of all hospitals or institutions involved;

(b)   The beginning and ending dates of each period of hospitalization;

(c)   The nature of the illness, injury or complaint for which you were admitted to the hospital;

(d)   The names, addresses and relationships to you of all persons who treated or examined you;

(e)   The nature and extent of any permanent disabilities or residual effects; and,

(f)   The nature, source, and amount of any disability benefits, pensions or other remunerations received.

**ANSWER:   Objection. Plaintiffs object to this Interrogatory as irrelevant and overbroad. The Interrogatory specifically requests information wholly unrelated to Decedent Ellis Cook's illness. Subject to and without waiving said objections, Plaintiffs state: Decedent Ellis Cook was hospitalized for a heart attack.**

**See also authorizations and medical records deposited with Defense Coordinating Counsel.**

33.   If you have ever suffered any personal injuries or illness other than those involved in this lawsuit, state for each such injury or illness:

(a)   The date, place, names of persons involved, and circumstances surrounding each such injury or illness;

(b)   The nature and extent of the injuries or illnesses, including all ill effects or disabilities remaining at the time of the last treatment or examination;

14

(c)     The nature and extent of the injuries or illnesses including all ill effects or disabilities remaining at the time of answering these interrogatories;

(d)     The names and addresses of all persons who treated or examined you, together with the date of the last treatment or examination; and,

(e)     The nature, source, and amount of any disability benefits, pensions, or other remunerations for such injuries or illnesses.

**ANSWER:     See response to Interrogatory numbers 32 and 34.**

34.     With respect to each doctor who has examined or treated you from the year 1936 to date, state the following:

(a)     The name and address of each such doctor;

(b)     The complaint that you had which caused you to see the particular doctor;

(c)     The type of examination and treatment that each doctor gave you; and,

(d)     The date or dates on which you were examined and treated by each particular doctor.

**ANSWER:     Objection. Plaintiffs object to this Interrogatory as irrelevant and overbroad. The interrogatory specifically requests information unrelated to Decedent Ellis Cook's illness. Subject to and without waiving said objection, Plaintiffs state:**

**Dr. Dhar, Hampton, SC, retired;**
**Dr. Luis R. Vega, 408 Jackson Ave. East, Hampton, SC 29924;**
**Colleton Medical Center P.O. Box 402719, Atlanta, GA 30384-2719;**
**Dr. Montenegro, 1000 Pine Street, Varnville, SC 29944; and**
**Keyserling Cancer Center, 1680 Ribaut Road, Port Royal, SC 29935;**

**See also above responses to Interrogatory number 32.**

35.     Have you ever had chest x-rays taken?  If so, state the following for each set of x-rays taken:

(a)     The name and address of the office or hospital where the x-rays were taken;

(b)     The reason why such x-rays were taken;

(c)     The date or dates on which the x-rays were taken;

(d)     The x-ray diagnosis that was reported to you.

**ANSWER:     See medical records and medical providers listed in response to Interrogatory numbers 32 and 34.  Plaintiffs do not recall other x-rays.**

36.     Do you or your attorneys have any medical reports from any persons, hospitals, doctors or medical practitioners, or institutions that have ever treated or examined you at any time?  If so, please attach copies of the reports to your answers to these interrogatories.  If you will not voluntarily attach copies of the reports to your answers to these interrogatories, then please state fully and in detail:

(a)     The identity of the report or reports by date, subject matter, name, address, job title or capacity of the person(s) to whom addressed or directed, and the job title or capacity of the person or persons who prepared these same; and,

(b)     The name, address, and present whereabouts of the person who has custody or control of the medical records and the purpose of said preparation.

**ANSWER:     See authorizations and medical records deposited with Defense Coordinating Counsel.**

37.     Have you ever received any nursing care or housekeeping services for or because of any injury sustained or any other physical condition?  If yes, please state fully and in detail:

(a)     The names, addresses and the relationship to you of the person(s) administering such care or services;

(b)     The dates during which such care or services were received; and,

(c)     The injury or illness or physical condition necessitating such care or services.

**ANSWER:     No.**

38.     Have you ever been confined to bed or home as a result of any illness, injury, or emotional or psychological illness or distress you may have sustained at any time? If yes, please state fully and in detail:

        (a)    The dates during which you were confined to your bed or home; and,

        (b)    The address where each confinement took place.

**ANSWER:     Objection. Plaintiffs object to this Interrogatory on the grounds that the information sought is irrelevant to the present claim. By way of further answer without waiving said objection, none other than previously disclosed in response to Interrogatory numbers 32 and 34.**

39.     Have you ever had to wear any medical support, cast, brace, or other device or garment, or use any other type of medical aid at any time? If yes, please state fully and in detail:

        (a)    A description of the item;

        (b)    Whether it was rented or purchased;

        (c)    The name and address of the supplier;

        (d)    The cost of the item; and,

        (e)    The period of time it was used.

**ANSWER:     Objection. Plaintiffs object to this Interrogatory on the grounds that the information sought is irrelevant to the present claim. By way of further answer without waiving said objection, oxygen.**

40.     State the dates, places and circumstances and results including any interpretative or diagnostic conclusions or possibilities of each and every x-ray or radiological examination of your body during your lifetime. Please include in your answer for each such examination, in addition to the above requested information:

        (a)    Name, address, and telephone number of each prescribing physician of each examination;

(b)     Name, address, and telephone number of each examining physician in each examination;

(c)     Name, address, and telephone number of the medical institution or laboratory, public or private, in which such examination was performed;

(d)     The number of x-rays taken;

(e)     Name, address, and telephone number of the present or last known custodian of each such x-ray;

(f)     The specific areas of the body of which the x-ray examination was made;

(g)     The interpretative or diagnostic results, conclusions, or possibilities derived from each such examination. Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time same was made known to you, or anyone related to you or acting in your behalf; and,

(h)     Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

(i) Purpose and objective of same;

(ii) Success or failure of same;

(iii) Date, time, and duration of each such course of treatment or therapy;

(iv) Name of medication and the prescribed dosage;

(v) Accomplishments or degree of success of such treatment, therapy, or combination thereof; and,

(vi) Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of therapy or treatment, and the reasons for any such behavior on your part other than complete cooperation.

**ANSWER:     Objection. Plaintiffs object to this Interrogatory on the grounds that it is overbroad and seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said objection, see response to Interrogatory numbers 32 and 34. See also authorizations and medical records deposited with Defense Coordinating Counsel.**

41.    State the dates, places, and circumstances of each and every cardiology examination, or examination related to the circulatory system in any fashion, conducted upon you during your lifetime. In addition, include in your answer for each and every such examination:

(a)    Name, address and telephone number of each prescribing physician;

(b)    Name, address and telephone number of each examining physician;

(c)    Name, address and telephone number of each medical institution, office or laboratory, public or private, in which such examination was conducted;

(d)    Name, address and telephone number of the present or last known custodian of any results of such examination;

(e)    The interpretative or diagnostic results, conclusions or possibilities derived from each such examination. Include in your answer the date, time, place, source and nature of each such result, conclusion or possibility at the time that same was made known to you or anyone related to you or acting in your behalf; and,

(f)    Any treatment, recommendation or prescribed therapy resulting from such examination. Include in your answer:

(i)  Purpose and objective of same;

(ii)  Success or failure of same;

(iii)  Date, time, and duration of each such course of treatment or therapy;

(iv)  Name of medication and the prescribed dosage;

(v)  Accomplishments or degree of success of such treatment, therapy, or combination thereof; and,

(vi)  Whether you cooperated completely, or in part, or ignored any such treatment, recommendation, prescription, or course of therapy or treatment, and the reasons for any such behavior on your part other than complete cooperation.

**ANSWER:    Objection. Plaintiffs object to this Interrogatory on the ground that it is overly broad and seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. By way of further answer without waiving said**

**objection, see response to Interrogatory numbers 32 and 34. See also authorizations and
medical records deposited with Defense Coordinating Counsel.**

42. State the dates, places and every pulmonary or respiratory system-related
examination conducted upon you during your lifetime. In addition, include in your answer for
each and every such examination the following:

(a) Name, address and telephone number of each examining physician;

(b) Name, address and telephone number of each medical institution, office,
or laboratory, public or private, in which such examination was made;

(c) Name, address and telephone number of the present or last known
custodian of any results of such examination;

(d) The interpretative or diagnostic results, conclusions, or possibilities
derived from each such examination. Include in your answer the date,
time, place, source and nature of each such result, conclusion or possibility
at the time that same was made known to you or anyone related to you or
acting in your behalf; and,

(e) Any treatment, recommendation or prescribed therapy resulting from such
examination. Include in your answer:

(i) Name, address and telephone number of each prescribing physician;

(ii) Purpose or objective of same;

(iii) Success or failure of same;

(iv) Date, time and duration of same;

(v) Name and dosage of prescribed medication;

(vi) Accomplishments or degree of success of such treatment or therapy or
combination thereof; and,

(vii) Whether you cooperated completely or only in part or ignored each
such recommendation, prescribed treatment, or therapy, and the reasons
for any such behavior on your part other than complete cooperation.

**ANSWER:     See response to Interrogatory numbers 32 and 34. See also authorizations**

**and medical records deposited with Defense Coordinating Counsel.**

43.     If you will do so without a motion to produce, please attach copies of any records,

receipts or invoices related in any fashion to any or all of your answers to the above three

interrogatories.

**ANSWER:     Pursuant to Standing Order #1, authorizations and medical records have been deposited with Defense Coordinating Counsel.**

44.     For each and every present or past symptom, indication, malaise or effects which

you contend to be directly or indirectly related to any disease, disability or physical condition or

state of your body or health, and which you contend is relevant to this lawsuit, please state:

(a)     Nature and description of such symptoms;

(b)     The disease, disability or physical condition to which said symptom is related and the nature and extent of such relationship;

(c)     The date, time, place and manner in which such symptom first manifested itself or was made known to you, including all pertinent information as to the source of such knowledge;

(d)     Whether you contend such symptom is related in any fashion to asbestosis or pleuritis, or any other condition from which you allegedly suffer, and the nature and extent of such relationship;

(e)     Whether you contend that such symptom is related in any fashion to the use or effect of any product manifested, sold or distributed, in whole or in part, by defendant or any subdivision or affiliate thereof. Include in your answer the nature and extent of said relationship and the name, description and identity of the product referred to in your answer;

(f)     The facts, writings and publications, etc., upon which you base all or part of any of your above-stated contentions. If you will do so without a motion to produce, please attach copies of all such writings or publications; and,

(g)     The name, business address and telephone number, job title, and resident address and telephone number of each and every witness who can testify in support of any or part of any of your above-stated contentions.

**ANSWER:**    (a-e)  Decedent Ellis Cook's symptoms began in February 2008.  Decedent had flu-like symptoms.  Decedent did not have these problems prior to the mesothelioma.  Plaintiffs believe the problems were caused by the disease.  Plaintiffs believe the asbestos products that Decedent Ellis Cook worked with and around caused the disease.

**(f-g)  Objection.  Plaintiffs object to this Interrogatory on the grounds that it is overly broad and seeks information that is not relevant nor reasonably calculated to lead to discovery of admissible evidence.  By way of further answer without waiving said objection, see responses to Interrogatory numbers 11-13.**

45.    Do you contend that you are suffering from pleuritis?

**ANSWER:    Not to Plaintiffs' knowledge.  See medical records deposited with Defense Coordinating Counsel.**

46.    If your answer to Interrogatory No. 45 is in the affirmative, please state:

(a)    Date and time of such diagnosis;

(b)    Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)    Method and information upon which such diagnosis was based;

(d)    Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)    Name, address and telephone number of each and every person, including your relatives, employer, or anyone acting in your behalf to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing such revelation;

(f)    Describe in detail the specific course of treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)    Name, address and telephone number of Plaintiffs' employer at time of diagnosis; and,

(h)    If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please

state:

(i)  Nature, extent and exact content of such prescription or recommendation;

(ii)  Plaintiffs' response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii)  State all facts upon which you rely to support a contention that such pleuritis is related to exposure to asbestos.

**ANSWER:** **Not applicable.**

47.  Do you contend that you are suffering from asbestosis?

**ANSWER:** **Not to Plaintiffs' knowledge. See authorizations and medical records deposited with Defense Coordinating Counsel.**

48.  If your answer to Interrogatory No. 47 is in the affirmative, please state:

(a)  Date and time of such diagnosis;

(b)  Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)  Method and information upon which such diagnosis was based;

(d)  Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)  Name, address and telephone number of each and every person, including your relatives, employer or anyone acting in your behalf, to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing said revelation;

(f)  Describe in detail the specific course of treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)  Name, address and telephone number of Plaintiffs' employer at the time of diagnosis; and,

23

(h)     If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i)  Nature, extent and exact content of such prescription or recommendation; and,

(ii)  Plaintiffs' response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations.

**ANSWER:**     **Not applicable.**

49.     Do you contend you are suffering from any other pulmonary disease?

**ANSWER:**     **Yes, Mesothelioma.**

50.     If your answer to Interrogatory No. 49 is in the affirmative, please state:

(a)     Date and time of such diagnosis;

(b)     Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)     Method and information upon which such diagnosis was based;

(d)     Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)     Name, address and telephone number of each and every person, including your relatives, employer or anyone acting in your behalf, to whom such diagnosis was made known, including the date, time and place of such revelation and the name, address and telephone number of anyone witnessing said revelation;

(f)     Describe in detail the specific course of the treatment or therapy, including any medication, prescribed as a result of such diagnosis, and the name, address and telephone number of each prescribing physician;

(g)     Name, address and telephone number of Plaintiffs' employer at time of diagnosis; and,

(h)   If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i)  Nature, extent and exact content of such prescription or recommendation;

(ii)  Plaintiffs' response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii)  State all facts upon which you rely to support a contention that such pulmonary disease is related to exposure to asbestos.

**ANSWER:    See response to Interrogatory numbers 32, 34, 51, 52 and the authorizations and medical records deposited with Defense Coordinating Counsel.**

51.   Do you contend that you are suffering from any cancer, "incipient cancer", carcinoma or sarcoma?

**ANSWER:    Yes, Mesothelioma.**

52.   If your answer to Interrogatory No. 51 is in the affirmative, please state:

(a)   Date and time of such diagnosis;

(b)   Name, address and telephone number of diagnosing physician and any concurring physicians;

(c)   Method or information upon which such diagnosis was based including biopsies, histological or cytology studies;

(d)   Name, address and telephone number of each and every hospital, medical institution, laboratory, physician, nurse, laboratory technician, etc., involved in any part of such diagnosis;

(e)   Name, address and telephone number of each and every person, including any relatives, employer or anyone acting in your behalf to whom such diagnosis was made known, including the date, time and place of such revelation, and the name, address and telephone number of anyone witnessing said revelation;

(f)   Describe in detail the specific course of therapy or treatment, including any medication, prescribed as a result of such diagnosis, and the name,

address and telephone number of each prescribing physician;

(g)    Name, address and telephone number of Plaintiffs' employer at time of diagnosis; and,

(h)    If said diagnosis resulted in any prescribed or recommended change in your occupation, behavior, life-style or work habits or conditions, please state:

(i) Nature, extent and exact content of such prescription or recommendation;

(ii) Plaintiffs' response to same and reasons for such response, particularly stating any reasons for failing to comply fully with such prescriptions or recommendations; and,

(iii) State all facts upon which you rely to support a contention that such pulmonary disease is related to exposure to asbestos.

**ANSWER:**    **Decedent was diagnosed March 27, 2008 by Biopsy Diagnostics, Ridgeland, SC.  See response to Interrogatory numbers 32, 34, 49, 50, and 51.**

53.    Are you aware that any adverse effects of exposure to asbestos and asbestos products may be cumulative in nature and that continued exposure to such materials by one suffering from asbestosis or a related illness might have significant adverse effects upon the extent and severity of such illness?  If your answer is in the affirmative, please state:

(a)    The date, time and place that you first acquired such awareness;

(b)    Specific identity of such source of information providing or leading to such awareness; and,

(c)    Any change in your behavior, life-style, occupation, work habits, etc., prescribed by such awareness.

**ANSWER:**    **Objection.  Plaintiffs object to this Interrogatory on the ground that it is vague, overly broad, and irrelevant.  By way of further answer without waiving said objection, Decedent had mesothelioma and didn't know about anything to make it worse.**

54.    After being informed that you were suffering from asbestosis, pleuritis, or any

alleged asbestos-related illness, did you continue to engage in any activity or occupation in which you encountered subsequent exposure to asbestos or asbestos- containing materials? If your answer is in the affirmative, please state:

    (a)    Nature and description of such activity or occupation;

    (b)    Name, address and telephone number of your employer at the time and subsequent to the diagnosis of any of the ailments referred to in the above interrogatory. Include in your answer:

        (i) Your job title and description of work and activities and duties; and,

        (ii) Manner and extent of resulting exposure to asbestos or asbestos-containing materials.

    (c)    Your detailed reasons for engaging in such activity or occupation; and,

    (d)    Whether your participation in such activity or occupation and consequential exposure to asbestos or asbestos- containing materials was contrary to competent medical or professional advice (including such advice from employers, union representatives, publications, etc.). If so, please state in detail:

        (i) The identity, description, address, etc., of each source of such advice;

        (ii) The date, time and place such advice was given;

        (iii) The name, address and telephone number of each and every person present when such advice was given to you; and,

        (iv) Your response to such advice and the reasons therefore.

**ANSWER:**    **No.**

    55.    Please list in chronological order by date of admission all hospitals, extended care centers or nursing homes in which you have been a patient or an out-patient during your lifetime. Please include in your answer the dates of admission and discharge.

**ANSWER:**    **See response to Interrogatory numbers 32 and 34, see also authorizations and medical records deposited with Defense Coordinating Counsel.**